Slip Op. 15-115

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CÁMARA NACIONAL DE LAS INDUSTRIAS AZUCARERA Y ALCOHOLERA, | |
| Plaintiff, | |
| AMERICAN SUGAR COALITION, | |
| Plaintiff-Intervenor, | Before: Mark A. Barnett, Judge |
| v. | Court No. 15-00123 |
| UNITED STATES, | |
| Defendant, | |
| IMPERIAL SUGAR COMPANY, | |
| Defendant-Intervenor. | |

OPINION

[The court finds that Plaintiff failed to establish constitutional standing. Accordingly, the court grants Defendant's motion to dismiss.]

Dated: October 16, 2015

*Philippe M. Bruno*, *Irwin P. Altschuler*, and *Rosa S. Jeong*, Greenberg Traurig, LLP, of Washington, D.C., for Plaintiff Cámara Nacional de las Industrias Azucarera y Alcoholera.

*Karl S. von Schriltz* and *Courtney S. McNamara*, Attorney-Advisors, Office of General Counsel, U.S. International Trade Commission, of Washington, D.C., for Defendant United States. With them on the briefs was *Andrea C. Casson*, Assistant General Counsel for Litigation.

Barnett, Judge:  Before the court is Defendant United States' ("Defendant")

Motion to Dismiss pursuant to United States Court of International Trade ("CIT")

Rule 12(b)(1). *See* Def.'s Mot. to Dismiss ("MTD"), ECF No. 26. Plaintiff Cámara Nacional de las Industrias Azucarera y Alcoholera ("Plaintiff" or "Mexican Sugar Chamber") opposes the motion. *See* Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 32.[1] Plaintiff brings this action for judicial review of the United States International Trade Commission's ("ITC" or "Commission") decision that domestic sugar producers Imperial Sugar Company ("Imperial") and AmCane Sugar LLC ("AmCane") had standing to request review of suspension agreements pursuant to 19 U.S.C. §§ 1671c(h), 1673c(h). *See generally* Compl., ECF No. 9. Defendant moves to dismiss the Complaint, arguing that "the Court must dismiss the action for lack of jurisdiction" because Plaintiff failed to "identify or allege any injury-in-fact that a favorable decision from this Court could redress." MTD at 6.

## BACKGROUND AND PROCEDURAL HISTORY

The Mexican Sugar Chamber is an association with a majority of its members consisting of Mexican sugar producers. *See* Compl. ¶ 3. The Mexican Sugar Chamber was a party to the ITC proceeding, which is the subject of this action. *See generally* Compl. On April 17, 2014, the United States Department of Commerce ("Commerce") initiated antidumping and countervailing duty ("AD" and "CVD," respectively) investigations of sugar imported from Mexico. *See Sugar from Mexico*, 79 Fed. Reg. 22,795 (Dep't of Commerce Apr. 24, 2014) (initiation of antidumping duty investigation);

---

[1] Plaintiff-Intervenor American Sugar Coalition (ECF No. 25) and Defendant-Intervenor Imperial Sugar Company (ECF No. 17) did not submit any briefs in this motion.

*Sugar from Mexico,* 79 Fed. Reg. 22,790 (Dep't of Commerce Apr. 24, 2014) (initiation of countervailing duty investigation).

On May 12, 2014, the ITC found a "reasonable indication" of material injury to the sugar industry in the United States by reason of subject imports. *See Sugar from Mexico*, 79 Fed. Reg. 28,550 (USITC May 16, 2014). Commerce issued an affirmative preliminary determination in the CVD investigation on August 25, 2014. *See Sugar from Mexico,* 79 Fed. Reg. 51,956 (Dep't of Commerce Sept. 2, 2014) (preliminary affirmative countervailing determination and alignment of final countervailing duty determination with final antidumping duty determination). Commerce also issued an affirmative preliminary determination in the AD investigation on October 24, 2014. *See Sugar from Mexico*, 79 Fed. Reg. 65,189 (Dep't of Commerce Nov. 3, 2014) (preliminary determination of sales at less-than-fair-value and postponement of final determination).

Shortly thereafter, on October 27, 2014, the United States, the Mexican government, and the Mexican sugar industry initialed proposed agreements suspending the AD and CVD investigations. *See* Compl. ¶ 9. Commerce then invited interested parties to comment on the proposed agreements. *See id*. ¶ 10. Imperial and AmCane entered appearances before Commerce and submitted comments. *See id*. The final Suspension Agreements were signed on December 19, 2014, and Commerce suspended the AD and CVD investigations accordingly. *See id*. ¶ 11. Before entering appearances to comment on the proposed suspension agreements, Imperial and AmCane submitted responses to the Commission's questionnaires but did not otherwise

participate "actively" in the Commission's investigations. *Id.* ¶ 12. Imperial first entered an appearance on December 9, 2014, during the final phase of the ITC's investigations, and AmCane first entered an appearance on January 2, 2015, during the final phase of the ITC's investigations and after the signing of the suspension agreements. *See id.*

On January 8, 2015, Imperial and AmCane petitioned the ITC to review the suspension agreements pursuant to 19 U.S.C. §§ 1671c(h) and 1673c(h). *See id*. ¶ 13. The ITC subsequently initiated the requested review. *Id*. The notice of institution stated that the ITC determined that Imperial and AmCane were "interested parties who were parties to the underlying investigations at the time the petitions were filed, and consequently are appropriate petitioning parties." *Id*. ¶ 14. The Mexican Sugar Chamber participated in the reviews and opposed Imperial and AmCane's petitions, arguing that the suspension agreements eliminated the injurious effect of subject imports and should remain in place. *See Sugar from Mexico*, Inv. Nos. 704-TA-1, 734-TA-1 (Review), USITC Pub. 4523 at 5 (Apr. 2015), A.R. 148, ECF No. 31; 80 Fed. Reg. 16426 (Mar. 27, 2015).

The Mexican Sugar Chamber challenged Imperial and AmCane's standing to petition the ITC for the review of the suspension agreements via a letter dated January 13, 2015. *See* Views of the Commission ("Views") at 4-5 n.13, A.R. 148, ECF No. 31. Specifically, the Mexican Sugar Chamber requested that the Commission reject the petitions for review because neither Imperial nor AmCane qualified as "an interested party which is a party to the investigation" pursuant to 19 U.S.C. §§ 1671c(h) and 1673c(h). *Id.* The ITC "rejected these arguments" and affirmed that Imperial and

AmCane were proper petitioning parties because they were interested parties and parties to the investigations pursuant to 19 U.S.C. §§ 1671c(h) and 1673c(h).  *See id*. The ITC agreed with the Mexican Sugar Chamber's position, however, on the effect of the suspension agreements, finding that the agreements "eliminate completely the injurious effect of subject imports."  *Sugar from Mexico*, USITC Pub. 4523 at 1. Accordingly, the suspension agreements remained in effect.

Thereafter, Imperial and AmCane independently filed summonses with this court, challenging the ITC's injurious effects determination regarding the suspension agreements.  *See Imperial Sugar Co. v. United States*, Court No. 15-00118, *AmCane Sugar LLC v. United States*, Court No. 15-00122.  The Mexican Sugar Chamber intervened as of right as a defendant-intervenor in both actions.  *See* Court No. 15-00118, ECF Nos. 12, 13; *see also* Court No. 15-00122, ECF Nos. 12,13.

On April 27, 2015, the Mexican Sugar Chamber filed this action (ECF No. 1, Summons) and filed its complaint on May 26, 2015 (ECF No. 9).  The Mexican Sugar Chamber subsequently sought the consent of Imperial, AmCane, and the ITC to consolidate its case with *Imperial Sugar Company*, Court Number 15-00118, and *AmCane Sugar LLC*, Court Number 15-00122, under the lead caption *Imperial Sugar Co. v. United States*.  *See generally* Mot. Consol., ECF No. 12.  Imperial and AmCane gave their consent, but the ITC opposed consolidation.  *See* Mot. Consol. at 2.  The court consolidated Imperial and AmCane's actions on June 19, 2015, but held in abeyance a ruling on consolidation of this case, pending resolution of the Commission's motion to dismiss.  *See* Consol. Order, ECF No. 28.

The Mexican Sugar Chamber's Complaint challenges the ITC's determination that Imperial and AmCane have standing to request a review of agreements suspending AD and CVD investigations pursuant to 19 U.S.C. §§ 1671c(h) and 1673c(h). *See* Compl. ¶¶ 18-19.  Specifically, the Mexican Sugar Chamber contends that the determination was unsupported by substantial evidence and otherwise not in accordance with law because, it alleges, Imperial and AmCane were not "parties to the investigations" and thus were not "proper petitioning parties" within the meaning of those statutory sections.  *Id*.

Defendant moves to dismiss for lack of subject-matter jurisdiction, pursuant to CIT Rule 12(b)(1).  *See* MTD at 1.  The Commission contends that the Mexican Sugar Chamber failed to demonstrate any injury-in-fact sufficient to establish constitutional standing to bring this claim.  *See id*. at 5-7.  The Commission avers that, because the Mexican Sugar Chamber prevailed on the merits of the review of the suspension agreements, the subsidiary finding that Imperial and AmCane had standing to petition for the review is insufficient to provide the injury-in-fact necessary to establish standing. *See id*. at 7-8.

## STANDARD OF REVIEW

To adjudicate a case, a court must have subject-matter jurisdiction over the claims presented.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the

Court No. 15-00123                                                                                                    Page 7

court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

A plaintiff bears the burden of establishing subject-matter jurisdiction. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). When subject-matter jurisdiction is challenged at the motion to dismiss stage, courts must presume that the factual allegations in the complaint are true and make reasonable inferences in the plaintiff's favor. *See Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988). The allegations, however, "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The showing must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## DISCUSSION

"The Constitution 'limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies.'" *Hein v. Freedom Religion Found., Inc.*, 551 U.S. 587, 597 (2007) (quoting U.S. CONST. art. III, § 2, cl. 1). A key component of a case or controversy is standing. *See* U.S. CONST. art. III, § 2, cl. 1; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). As the

Supreme Court explained, "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). In addition, the plaintiff must demonstrate that the injury is "fairly traceable to the challenged action" and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quotation marks and brackets omitted).

The Court of Appeals for the Federal Circuit ("Federal Circuit") has noted, "[a]s a general rule, the prevailing party in a proceeding may not appeal the proceeding just because he disagrees with some of the findings or reasoning." *Freeport Minerals Co. v. United States*, 758 F.2d 629, 634 (Fed. Cir. 1985). The parties in *Freeport* disputed what constitutes a reviewable determination by an aggrieved party. In that case, domestic producer Freeport challenged a court affirmed remand determination because "it wasn't until [Commerce's] 1983 [remand] notice [("1983 notice")] revoking the order [as to Chevron] that Freeport believed it was aggrieved." *Id.* at 633.

In contrast, Commerce and defendant intervenor, Chevron, countered that Freeport's action was untimely because Freeport should have challenged the original determination in 1982 [("1982 notice")], despite the fact that the order remained in place as to Chevron, and Freeport, therefore, was not aggrieved. *See id*. According to Commerce and Chevron, the 1982 notice "constituted the final administrative review of the antidumping finding for the period under review." *Id*.

   The CIT had agreed with Commerce and Chevron and dismissed Freeport's case as untimely.  *See Freeport Minerals Co. v. United States*, 7 CIT 65, 583 F. Supp. 586 (1984).  On appeal, the Federal Circuit reversed on the grounds that "since the end result of the [original] notice was favorable to Freeport, there was no point in its challenging [Commerce] then" and stated that "under the [CIT's] remand, [Commerce] made a new determination under section 1675 based on the same finding."  *Freeport Minerals*, 758 F.2d at 634.  The appellate court viewed "the publication of the 1983 [remand] notice as a publication of that determination as required under section 1675(a)."  *Id*.  The Federal Circuit further found that the other two issues in Freeport—the doctrines of collateral estoppel and laches—"[founder] on the same rock of confusion" as the standing issue raised by Commerce and Chevron.  *Id*. at 636.  Thus, these doctrines did not bar Freeport from challenging the 1983 notice.  *See id.*

   Based upon *Freeport* and its progeny, this court has repeatedly held that a party lacks standing to challenge a subsidiary finding in an administrative determination in which it prevailed on the merits.  *See, e.g.*, *Zhanjiang Guolian Aquatic Prods. Co. v. United States*, 38 CIT __, 991 F. Supp. 2d 1339 (2014); *Royal Thai Gov't v. United States*, 38 CIT at __, 978 F. Supp. 2d 1330 (2014); *Rose Bearings Ltd. v. United States*, 14 CIT 801, 751 F. Supp. 1545 (1990).  Consequently, "[i]t is well-settled in this court that when a [party] challenges an administrative proceeding in which it has prevailed there is no case or controversy, and thus no jurisdiction lies."  *Zhanjiang Guolian*, 991 F. Supp. 2d at 1342 (internal quotations and citations omitted).

Notwithstanding this court's well-settled law, the Mexican Sugar Chamber asserts that it may nonetheless seek recourse on the original determination and either cannot or should not wait for any possible remand determination reversing the ITC's original determination. Plaintiff argues that the ITC's determination as to Imperial and AmCane's standing is the type "from which legal consequences flow, having a substantial impact on the rights of the parties," as required for Article III standing. Pl.'s Opp'n at 6-7 (citing *Internor Trade, Inc. v. United States*, 10 CIT 826, 830, 651 F. Supp. 1456, 1460 (1986)). The Mexican Sugar Chamber contends that, in *Internor*, the CIT held that a plaintiff had a stake in the outcome of an action to review an affirmative less-than-fair-value determination by Commerce, although no antidumping duty order was issued, due to a negative injury determination by the ITC. *See* Pl.'s Opp'n at 6-7 (citation omitted). The Mexican Sugar Chamber urges that it is similar to the *Internor* plaintiff in that a dumping finding by Commerce would be to its detriment if a future investigation resulted in an adverse determination. *See* Pl.'s Opp'n at 7 (citation omitted). The Mexican Sugar Chamber thus analogizes its appeal of the ITC's standing determination as akin to "a protective cross-appeal filed by a defendant that has prevailed on the issue of damages but has lost on liability." *Id*. (citing *Internor*, 10 CIT at 830, 651 F. Supp. at 1460).

The court's decision in *Internor* is readily distinguishable, however. First, in *Internor*, the plaintiff's right to appeal Commerce's affirmative less-than-fair-value determination, despite a separate negative injury determination by the ITC, was

expressly provided for by statute.[2]  See *Internor*, 10 CIT at 828-29, 651 F. Supp. at 1458-59 (citation omitted).  There is no similar statutory right to appeal a subsidiary standing determination by the ITC within a broader decision otherwise favorable to plaintiff.  Further, the remaining challenges to the plaintiff's cause of action in *Internor* related to whether legal consequences flowed from the agency decision, which is the test for assessing whether a case is ripe for review.  As the *Internor* court explained,

> [t]he purpose of the ripeness doctrine is to prevent courts through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has

---

[2] As the *Internor* court stated,

> Section 1516a(a)(2) of Title 19, U.S.C. has provided for commencement of actions in this Court of International Trade within 30 days of publication in the Federal Register of antidumping-duty orders to review final affirmative ITA determinations underlying such orders.  In 1984, Congress enacted the Trade and Tariff Act, section 623 of which was entitled "Elimination of Interlocutory Appeals."  Subparagraph (a)(4) of this section stated:
>
>> Redesignate paragraph (3) [of 19 U.S.C. § 1516a(a) (1979)] as paragraph (4) and after paragraph (2) insert the following:
>>
>> (3) EXCEPTION.—Notwithstanding the limitation imposed by paragraph (2)(A)(ii) of this subsection, a final affirmative determination by the administering authority under section 705 or 735 of this Act may be contested by commencing an action, in accordance with the provisions of paragraph (2)(A), within thirty days after the date of publication in the Federal Register of a final negative determination by the Commission under section 705 or 735 of this Act.

10 CIT at 828-29, 651 F. Supp. at 1458-59.  The court concluded that it must permit the claim to proceed because "[t]he text of the provision at issue is not ambiguous, and this court is not at liberty to interpret that language as if it were otherwise." *Id.* (citations omitted).

Court No. 15-00123                                                                                          Page 12

>been formalized and its effects felt in a concrete way by the challenging parties.

10 CIT at 830, 651 F. Supp. at 1460 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) (internal quotations omitted)).  Here, the parties do not dispute that the agency decision is final, and thus there is no question as to ripeness.  The pertinent question before this court is whether the Mexican Sugar Chamber has suffered an injury given that it prevailed on the merits of the underlying review.  The court discerns no basis in the *Internor* decision to depart from the significant precedent that holds a party cannot establish injury-in-fact under such circumstances.

Plaintiff contends, however, that it suffered an injury-in-fact because of the "uncertainty" surrounding the validity of the suspension agreements created by the review and pending appeal.  Pl.'s Opp'n at 7-8.  Such uncertainty does not establish injury-in-fact for standing purposes.  Injury-in-fact requires a showing of "actual and imminent" harm.  *Lujan*, 504 U.S. at 560-61; *see also Zhanjiang Guolian*, 991 F. Supp. 2d at 1342 ("the fact that no CVD order has been issued means that Plaintiff is not suffering any injury due to the errors it alleges the ITC committed").  The Mexican Sugar Chamber's Complaint fails to allege that it is currently suffering any harm and cannot make an imminent harm allegation in good faith because the suspension agreements remain in effect.  *See Royal Thai*, 978 F. Supp. 2d at 1333 (dismissing case where plaintiff "is currently not suffering any actual or imminent injury in fact").  Moreover, this court has rejected the contention that the existence of an appeal establishes an injury-

in-fact because it requires the court to adjudicate a hypothetical negative outcome.[3] The court therefore concludes that the Mexican Sugar Chamber has not established an injury-in-fact for Article III standing purposes.

Finally, the Mexican Sugar Chamber appeals to the court's notions of fairness. It urges that it may have no opportunity to be heard on the standing issue if the court does not hear the issue now. It contends that it may not be able to raise the issue on remand, should Imperial and AmCane prevail in their appeals, because the issue will be outside the scope of the remand order. In addition, the Mexican Sugar Chamber argues that it may be unable to raise its claim about Imperial and AmCane's standing in the parallel proceedings because a cross-claim will be subject to the same constitutional standing requirements as its claim in this action. Moreover, it notes that such a cross-claim may be untimely at this stage of the litigation.

These arguments do not change the fundamental problem that the Mexican Sugar Chamber has failed to demonstrate an injury-in-fact sufficient for standing. Case law is unequivocal that a plaintiff may not challenge subsidiary determinations where it has prevailed in the overall proceeding, and, as discussed above, *Freeport* makes it clear that, should the parallel proceeding result in a remand determination adverse to

---

[3] The court will not speculate about future administrative reversals. *See Zhanjiang Guolian,* 991 F. Supp. 2d at 1342 ("Speculation of an administrative reversal is hypothetical, and hypothetical harm cannot provide jurisdiction."); *see also Rose Bearings*, 14 CIT at 802-03, 751 F. Supp. at 1546 ("Rose's not-so-rosy scenario, that the court *may* remand the case and that the ITA *may* reverse its finding as to spherical plain bearings, is precisely the type of situation which calls for an advisory opinion, and the court is barred explicitly from issuing such a ruling.").

Court No. 15-00123 Page 14

the Mexican Sugar Chamber, it would then have the opportunity to obtain judicial review of this claim, assuming that it meets any relevant procedural requirements. Because it has suffered no injury, the Mexican Sugar Chamber lacks standing to pursue this action. Therefore, the court lacks jurisdiction, and accordingly, grants Defendant's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the court grants Defendant's motion to dismiss (ECF No. 26) and denies the Mexican Sugar Chamber's motion to consolidate as moot (ECF No. 12). Judgment will follow.

/s/   Mark A. Barnett
Mark A. Barnett, Judge

Dated: October 16, 2015
       New York, New York